MILBRATH, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 9—March 9, 1909.*

*Criminal law: Acts done by or through corporation: Embezzlement: Conversion of money: Demand when unnecessary: Evidence: Instructions to jury.*

1. A corporation exists only in contemplation of law, and the legal fiction that it is a separate entity, though necessary for many purposes, cannot be urged to an intent and purpose not within the reason and policy of that fiction.

2. A person charged with a crime will not be heard to say in justification that he committed the act in his official capacity as officer of a corporation; nor to assert that acts in form corporate acts were not his acts merely because done by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose.

3. One may convert money of another to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management and of which he is a stockholder and officer in charge; and the fact that the benefit which he receives is not equal to the whole amount of the money is not material.

4. Defendant and his partners in a loan and real-estate business, who had loaned on real-estate security certain money intrusted to them for that purpose, organized a corporation to carry on the business. They were the sole and controlling stockholders and officers therein, and turned over to it all the assets and business of the firm. Defendant was president. The money above mentioned was repaid at the office of the corporation in defendant's presence, was mingled with funds of the corporation, and was retained and used by it. The corporation was then insolvent, and defendant's account with it was overdrawn and continued so to be. The amount paid was credited on the books of the corporation to the owner of the money, but, for the purpose of concealing from her the fact that the principal had been repaid, the corporation, with defendant's knowledge, continued to pay interest to such owner as if the loan were still outstanding. Afterwards the corporation was adjudged bankrupt. *Held*, that the corporation was a mere instrumentality through which defendant had embezzled the money and converted it to his own use.

5. On the trial of the defendant for such embezzlement, evidence as to the organization, management, control, manner of doing business, and insolvency of the corporation was admissible.

6. It was not error in such case to charge the jury that the payments of interest to the owner after the principal had been paid in to the corporation were made by the defendant; nor to charge, as to the defendant and the secretary of the corporation who received the money when it was paid in, that they and each of them held it in trust for the owner.

7. Nor, in view of the uncontradicted evidence, was it error to charge the jury that it was not disputed that the owner of the money in question lost it by fraud; but this portion of the charge is not approved.

8. It is not error to refuse to give requested instructions relating to matters sufficiently covered by the general charge.

9. Under the circumstances above stated, the fact that the money had been paid in to the corporation not being known to the owner until after the bankruptcy of the corporation, when demand therefor would have been useless, it is immaterial that no demand for the money was made upon the defendant before the prosecution.

ERROR to review a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

The plaintiff in error (hereinafter called defendant) was convicted in the said circuit court of the offense of embezzlement and sentenced to imprisonment for three years in the state prison. The information upon which the defendant was tried charged him, Edward J. Wagner, and William E. Milbrath, as agents and employees of Helena Mizer, having the care, custody, and possession of $300 of her money, with the embezzlement of said sum and the unlawful and fraudulent conversion thereof to their own use on February 27, 1903. A motion for a new trial was made and overruled, and the defendant assigns thirty-four errors, twenty-one of which relate to the admission of evidence, one to the refusal to discharge the defendant because the offense charged in the information had not been established, seven to the charge of the court, and five in refusing to instruct the jury as requested by defendant.

At the beginning of the first trial in the municipal court the defendant Edward J. Wagner, after the jury had been sworn, announced to the court that he would testify for the state. After having so testified, and at the conclusion of this trial, he was by order of the court discharged. The defendant William E. Milbrath was also discharged by the court at the conclusion of this trial upon the ground that no case had been made out against him. The jury disagreed and the case was removed to the circuit court, where the defendant was

tried upon the same information as the sole defendant, and this trial resulted in the conviction which is here for review.

The cause was submitted for the plaintiff in error on the brief of *Julius E. Roehr,* and for the defendant in error on that of the *Attorney General* and *F. C. Eschweiler,* assistant district attorney of Milwaukee county.

Among other references upon the part of the plaintiff in error were the following: 10 Am. & Eng. Ency. of Law (2d ed.) 983, 992; secs. 4418, 4419, Stats. (1898); *State v. Mc-Fetridge,* 84 Wis. 473, 54 N. W. 1, 998; *Nonotuck S. Co. v. Flanders,* 87 Wis. 237, 58 N. W. 383; *Milwaukee T. Co. v. Fidelity & C. Co.* 92 Wis. 412, 66 N. W. 360; *Bates v. State,* 124 Wis. 612, 103 N. W. 251; *Albricht v. State,* 6 Wis. 74.

Among other references upon the part of the defendant in error were the following: *Bautz v. Adams,* 131 Wis. 152, 111 N. W. 69; *Thuemmler v. Barth,* 89 Wis. 381, 62 N. W. 94; *Sargeant v. Downey,* 49 Wis. 524, 5 N. W. 903; *State v. Miller,* 47 Wis. 530, 3 N. W. 31; *McAllister v. State,* 112 Wis. 496, 88 N. W. 212.

TIMLIN, J. I knew the defendant well. He had been for many years engaged in business at Milwaukee, respected, honored with confidential business patronage and with important public offices. He had reached the age of fifty-eight years and had children and grandchildren. I know of no sadder story than that of such a man in the afternoon of a well-spent life, under the pressure of unexpected business calamities and yielding to the delusions of hope, being tempted to lay his hands unlawfully upon the moneys of others intrusted to his keeping. I regret his misfortunes and sympathize with him in his misery, but neither regret nor sympathy can be allowed to swerve the mind from a consideration of the case according to law and the evidence.

The defendant, together with Edward J. Wagner and H. C. Roethlisberger, were copartners carrying on a real estate and

loan business in the city of Milwaukee from prior to April 29, 1891, to June 6, 1894. On the former date they loaned to one Kafura for Conrad Mizer $300 of the money of the latter, taking a note and mortgage to secure the loan executed by Kafura to one Ferdinand Groth, a person from whom the defendant held a power of attorney authorizing him to make investments, release mortgages, etc. Groth had no interest in the matter. He merely allowed the defendant to use his name. The defendant, as attorney in fact of Groth, assigned this mortgage to Conrad Mizer, who assigned it to Helena Mizer, both assignments unrecorded. This making of loans upon mortgage security for other persons was part of the business of said copartnership. June 6, 1894, the said copartners incorporated under the name of the C. W. Milbrath Company, with an authorized capital of $36,000, for the purpose of buying, selling, and exchanging real estate and personal property, writing insurance, and loaning money. All the assets of the copartnership and its business were turned over to and became the property of this corporation, of which the defendant was president, Roethlisberger vice-president, and Wagner secretary and treasurer. The corporation had a large business of the kind authorized by its charter, kept accounts with each of its clients, and, when money was received to be loaned out by it, such money was usually credited to the client's account, debited to that account when loaned out, and the securities delivered to the owner of the money. Such an account was kept with Helena Mizer under the name of the "Mizer Estate" on the books of the corporation. In August, 1905, the corporation was adjudged a bankrupt and scheduled real and personal property, exclusive of incumbrances thereon, to the amount of $16,230.93. The amount of claims filed and allowed aggregated $55,561.65. April 27, 1903, Kafura paid his note and mortgage at the office of the corporation and received a satisfaction dated that day executed by the defendant as attorney in fact for Groth. At this time the only stock-

holders in the corporation were the defendant and Wagner, who were also officers of the corporation and dominated and controlled it in all respects.

There was evidence from which the jury might infer that this money was delivered by Kafura to Wagner in the presence of the defendant and Wagner put it in the corporation safe. The account carried as "Conrad Mizer Estate" was credited on the books of the corporation with the money so paid. The money in question was put into the cash drawer in the safe and mingled with other moneys received by the corporation that day. The corporation had the use of the money, and it was deposited in the bank afterward to the general account of the corporation. The corporation continued to pay interest to Mrs. Mizer as if the loan was still outstanding for the purpose of concealing the fact from her that the principal of $300 had been paid by Kafura, and the defendant was aware of this. This was the way the corporation handled the moneys received from various clients for the purpose of loaning the same upon security. It never kept such money separate. At the time this money was received from Kafura the liabilities of the corporation largely exceeded its assets, and that condition continued down to the bankruptcy. At this time the defendant had overdrawn his account with the corporation to the amount of $31,000, Wagner had overdrawn to the amount of $10,000, the stock subscription of the defendant was $24,000 and that of Wagner $6,000, and this overdraft continued increasing up to the time of the bankruptcy. The money in question was delivered to the copartnership in the first instance for the purpose of investing the same upon security, and no other authority was ever given, and the corporation, so far as it could do so by action of its officers and stockholders, succeeded to the duties and liabilities of the precedent copartnership with respect to Mrs. Mizer.

The first twenty-one errors assigned by the defendant have relation to the question whether or not he could be convicted

of embezzlement of this sum of $300 because of the creation and interposition of the corporation as above detailed, and because the information charges that the money in question was converted to the use of the defendant and Wagner and William E. Milbrath, the three persons present when the money was paid by Kafura.

The errors assigned in the admission of evidence challenge the correctness of rulings admitting the articles of incorporation, subscription agreement, and other corporate papers, evidence concerning who had direction and control of the corporation, the meetings of the stockholders and directors, and who were the stockholders. Also entries in the corporate books of account, including among other accounts the account of the defendant and that of Wagner and that of Helena Mizer, and the condition of such accounts and the records and files of the bankruptcy court relating to the bankruptcy of this corporation, and all the evidence tending to show transactions between Helena Mizer and the corporation.

Another class of errors assigned relate to evidence concerning other mortgages belonging to Helena Mizer in the possession or under the control of the corporation and the time of payment thereof, and evidence of payment of money to the corporation on account of other clients and on account of similar loans, which payments were not remitted by the corporation to the owners or accounted for to them, and with reference to the ability of the corporation to repay the moneys that had been paid to it between April 27, 1903, and the time of its bankruptcy.

It will readily be seen that all these errors are assigned upon the theory that this corporation intervened between the principal and the loan agents after the relation of principal and agent had been created as an independent responsible personality, which by reason of its intervention to some extent changed the relations theretofore existing between the defendant and the Mizer estate, and itself received and converted the

$300 in question.   No doubt a corporation is for many pur-
poses a juristic person.   Corporations, having the right to
hold and enjoy property, to contract and be contracted with,
to sue and be sued, may in all such matters as an artificial per-
son assert the rights of property, contract, duty, or obligation
which a natural person might assert.   But we must not for-
get that a corporation exists only in contemplation of law.
Its personification is a legal fiction necessary to the ascertain-
ment and administration of the legal duties and rights, intrin-
sic and extrinsic, to the corporation, governing its internal ad-
ministration or its relations to the commonwealth or to other
persons.   Without this legal fiction the rights and liabilities
of the corporation, its members, and its creditors would fre-
quently be lost in the maze of legal rules.   But this personi-
fication of corporations has never been carried to the extent
contended for here.   When the corporation adopted articles
of incorporation and thereby brought itself as to subsequent
transactions within the law relative to incorporated bodies,
it did not absolve the incorporators from duties or liabilities
existing prior to the incorporation.   If the defendant and
Wagner chose to make this insolvent corporation, in which
they were the sole and controlling stockholders and of which
they were officers, the repository of trust funds collected by
them, it had no other effect in the law than if they delivered
such funds into the possession of any trustee or subordinate
employee controlled by them, whose possession must be
deemed their possession and whose acquisition must be
deemed their acquisition.   The corporation is in such case a
mere instrumentality through and by means of which the nat-
ural persons in control thereof carry out their acts.   This
made it necessary and proper that the incorporation, organ-
ization, management, control, and manner of doing business,
solvency or insolvency of the corporation, should be laid be-
fore the jury.   And there was no error in the admission of
evidence of the kind objected to reasonably necessary to show

the true situation of affairs and the mode of conducting the business.

It is further contended that the evidence is insufficient to support the verdict of conviction, in that the receipt of the $300 by the defendant personally is not shown, and, further, that the information charged a conversion, not to the use of the corporation, but to the use of the persons who were its officers, including the defendant. From what has been said it must be apparent that there was sufficient evidence of the relation of principal and agent between Conrad Mizer and his successor in interest, Helena Mizer, and the copartnership of C. W. Milbrath & Co. in the first instance. The defendant knew of the payment of the loan by Kafura, and executed personally as attorney in fact for Groth at the time a release of the mortgage in question. The money was paid over in his presence and he knew that it did not belong to him. The evidence is ample to support the contention that it was put in the corporation safe and mingled with the funds of the insolvent corporation and deposited in its bank account with the consent and by the act of the defendant conjointly with Wagner. He must be held to have known of the insolvent condition of the corporation at the time and that such disposal of the money would have substantially the same effect as throwing it into the fire. He made no attempt to reinvest the money, but, on the other hand, concealed from his principal the fact that the money had been collected and in this manner disposed of by him by continuing to pay from the corporate funds interest upon this loan to his principal as if the loan were still outstanding and unpaid. There cannot be much doubt that this constituted a conversion of the money by the defendant and Wagner. But was the money converted to their own use? One may convert money of another to his own use by paying it out upon his private or personal debt. *Guenther v. State,* 137 Wis. 183, 118 N. W. 640. If this is true, he can convert the money to his own use by putting it

into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management and of which he is a stockholder and officer in charge. The benefit he receives in the first case by discharge of his personal debt is equal to the whole amount of the money so paid. The benefit which he receives in the second case is not equal to the whole amount of the money so paid. But the extent to which defendant was benefited does not constitute the test. It is paid to his own use in either case. It is paid into that which is a mere instrumentality created by him under sanction of law, but as much under his control and as subservient to his will as the furniture of his office or the books of account in which he records his transactions. Under such circumstances there is no room for the legal fiction of separate corporate personality or for distinction between the defendant's acts as officer of the corporation and his acts as an independent natural person.

In *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 119 N. W. 568, where one person owned the majority of the shares of stock in each of three corporations, in each of which he was the principal managing officer and in each of which he controlled the board of directors, and these corporations through such person made certain corporate contracts between themselves, this court, speaking of the corporations, said:

"When he 'met' with himself, they met if he so willed. His unhampered authority to dictate was questioned by no one. He was simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual. We must look to his intent to some extent to determine just which corporate entity owned the property we are dealing with."

In *Pott v. Schmucker*, 84 Md. 535, 36 Atl. 592, 57 Am. St. Rep. 415, where one of the partners of an insolvent firm owning a separate business procured a charter of incorporation, turned over all the assets of the separate business to this corporation and took all its shares of stock except certain quali-

fication shares, and both the partnership and the corporation were in liquidation, it was held that in marshaling the assets for the benefit of creditors the court would not look at the corporation as a separate legal entity, but would look back of and beyond the charter and into the real substantial nature of the transactions.

In *Hoffman S. C. Co. v. Cumberland C. & I. Co.* 16 Md. 456, the question of independent and separate corporate personality was also disregarded. Conversely, acts of the shareholders and trustees attempted to be performed in their personal or individual capacity may as to the state be acts of the corporation, as in *People v. North River S. R. Co.* 121 N. Y. 582, 24 N. E. 834, where it was said:

"The abstract idea of a corporation, the legal entity, the impalpable and intangible creation of human thought, is itself a fiction, and has been appropriately described as a figure of speech. It serves very well to designate in our minds the collective action and agency of many individuals as permitted by the law, and the substantial inquiry always is what in a given case has been that collective action and agency. As between the corporation and those with whom it deals the manner of its exercise usually is material, but as between it and the state the substantial inquiry is only what that collective action and agency has done, what it has, in fact, accomplished, what is seen to be its effective work, what has been its conduct."

In *State ex rel. v. Standard O. Co.* 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, it was said that the legal fiction that a corporation is a person can never be urged to an intent and purpose not within the reason and policy of that fiction. Cases not within the reason and policy of that fiction must necessarily be rare, and no general rule that we are aware of has been in that respect formulated. But it is safe to say that in a criminal prosecution against a person charged with an offense committed by him against the laws of the state he could not be heard to say in justification that he committed that offense in his official capacity as officer of a corporation; nor

could he assert that acts in form corporate acts were not his acts merely because carried out by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose. *Hempfling v. Burr,* 59 Mich. 294, 26 N. W. 496. Other acts of embezzlement, see *People v. Hawkins,* 106 Mich. 479, 64 N. W. 736; *Paulson v. State,* 118 Wis. 89, 99, 94 N. W. 771.

We must regard these assignments of error as if the defendant and Wagner were both on trial.

The foregoing considerations dispose of, adversely to the defendant, the contention that it was erroneous to charge the jury as follows:

"Further, it is undisputed that Helena Mizer was not informed, either by the defendant or Wagner, of the payment of the money by Kafura, but that from time to time thereafter for a period of two years or more she was paid interest thereon by the defendant, *Charles W. Milbrath.*"

It is claimed that these payments were made to her by the corporation acting through its officers, but under the circumstances above detailed it was not incorrect to say that these interest payments were made by the defendant. So it was not error for the court to charge the jury:

"But the question for you to decide is: Did the defendant, *Charles W. Milbrath,* unlawfully and feloniously embezzle and fraudulently convert to his own use or to the use of some other person than the owner $300 or some part thereof of the money of Helena Mizer without her consent when *C. W. Milbrath* and E. J. Wagner were acting as her servants, agents, and employees, under the testimony and circumstances shown by the testimony."

Nor was it error to inform the jury that this $300 was not the money of C. W. Milbrath & Co., but was the money of Helena Mizer, because the evidence on that point is without substantial contradiction. There was no error in instructing the jury, with respect to the defendant and Wagner and concerning the $300 in question, "that they and each of them held it in trust for her," meaning Helena Mizer. Nor was

there any prejudicial error in charging the jury that before they could convict the defendant they must find from the evidence in the case that he intended to convert to his own use, or to the use of some person other than the owner, the money, or some part of it, belonging to Helena Mizer. The evidence being without dispute and all the facts and circumstances before the court, and the only conversion shown or claimed being a conversion to the use of the defendant and Wagner or else to the use of this corporation, the jury could not have been misled by this instruction.

It is further contended that the court erred in instructing the jury as follows: "It is not disputed that Helena Mizer lost her money by fraud." The accused, Wagner, who became a witness for the state, who had charge of this transaction with the defendant and co-operated with him in the control and management of the corporation, testified without contradiction that the receipt of this money by the corporation from Kafura was concealed from Helena Mizer by himself and the defendant, and interest paid to her semi-annually as if the loan were still outstanding, for the purpose of giving her the impression that her money had not been collected and was not in their hands. It can scarcely be claimed that this was not fraud, and if this fraud was not the sole cause of the loss of her money it must have contributed very materially to that result, because the object of the concealment was to prevent her from drawing out this money or demanding it, and it is reasonably probable that, had she done so within the first year after the receipt of the money by the corporation, it would have been paid over. This portion of the charge is not approved. But, in view of the uncontradicted evidence on this point, it cannot be said to have been prejudicial to the defendant.

The first request to charge which is called to our attention is substantially to the effect that it would not be sufficient to show that the money in question was converted by the defendant to the use of the corporation, and the same is true of the

third request forming the thirty-second assignment of error, and the fourth request forming the thirty-third assignment of error. We have already gone over this ground, and without further discussion must declare that these requests were properly refused.

The second request forming the thirty-first assignment of error we think related to matters sufficiently covered by the general charge, and the same is true of the request to charge forming the thirty-fourth assignment of error. The charge of the court, among other things, contained the following:

"You are to say and find from the evidence and circumstances surrounding the alleged commission of the offense whether the defendant did fraudulently convert the money of Helena Mizer to his own use, not merely that the money was converted, but that it was fraudulently converted. This must appear to your satisfaction beyond a reasonable doubt. . . . If you find the conversion and find that the person was defrauded by reason of it, it is your duty to consider that and all the other circumstances for the purpose of determining with what intent the money was converted."

This informed the jury that a mere conversion without fraudulent intent accompanying the act of conversion would not be sufficient to warrant conviction. The court further charged:

"The essential element in the crime charged is the felonious intent, and, before you can convict the defendant, you must find from the evidence in the case that he intended to convert to his own use, or to the use of some person other than the owner, the money, or some part of it, belonging to Helena Mizer and to cheat and defraud her. The felonious intent is an essential element of the crime of embezzlement, and must be shown by the prosecution beyond a reasonable doubt in order to convict the defendant."

The fact that no demand was made upon the defendant for the money before the prosecution was of no materiality. The defendant and his associate, Wagner, disarmed the vigilance of their principal by concealing the fact of payment and continuing to pay the interest periodically, and the fact that the

money had come into their hands was not known until after the bankruptcy of the corporation, when demand would have been a meaningless ceremony. Taking the whole charge together, and in view of the fact that the testimony except as to felonious intent is without substantial dispute, we are unable to say that any error was committed in the trial prejudicial to the rights of the defendant.

*By the Court.*—The judgment of the circuit court is affirmed.