[No. 17379. Department Two. January 25, 1923.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH
E. THOMAS, *Appellant.*[1]

CORPORATIONS (139)—OFFICERS—CRIMINAL RESPONSIBILITY. The president of a corporation actively participating in the matter, is criminally liable for an embezzlement by the corporation of money, although the money was paid to an employee who, acting under his general direction and the general policy of the company, received money paid in for a client and deposited it to the account of the company after it was in financial difficulty and unable to repay it before the appointment of a receiver.

CRIMINAL LAW (108)—EVIDENCE—OTHER OFFENSES—RELATIVE TO OFFENSE CHARGED. In a prosecution for larceny by embezzlement in which the accused testified to an attempt he had made to repay the claim and another similarly situated, cross-examination is proper as to his reasons for making efforts to pay these particular items and not others of a similar nature, and is not objectionable as evidence of other offenses.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 25, 1922, upon a trial and conviction of grand larceny. Affirmed.

*Rummens & Griffin,* for appellant.

*Malcolm Douglas* and *John D. Carmody,* for respondent.

MAIN, C. J.—The defendant was charged by information with the crime of grand larceny. The trial resulted in a verdict of guilty. A motion in arrest of judgment, as well as a motion for new trial, was made and overruled by the trial court. Judgment was entered upon the verdict and sentence imposed, from which the defendant appeals.

The essential facts may be summarized as follows: Joseph E. Thomas & Company was a corporation engaged in the real estate, insurance and mortgage loan

[1]Reported in 212 Pac. 253.

business at Seattle. Joseph E. Thomas, the appellant, was the president of the corporation, its managing officer, and was the owner of practically all of its capital stock. For a number of years the corporation had engaged extensively in loaning money upon real estate and selling mortgages to its numerous clients. The customary way in which it did business was to make a loan with the note and mortgage running to the corporation, then sell the security and transfer the note and mortgage to the purchaser. Generally, as the interest became due, it was paid to the corporation and thereafter remitted to the owner of the note and mortgage upon which it was paid. When the principal of the indebtedness was paid, this would either remain with the corporation until the client who owned the mortgage should take another security in lieu thereof, or, if the client desired the money, it would be paid to him. Money, as it was paid in, always went into the account of the corporation, and that company kept but one account. When the client was paid, for whose benefit the money had been paid into the corporation, the latter drew its check for the amount owing to the particular client. The business was all transacted in the name of the corporation. One L. P. Hunt had had a number of transactions with it in the way of purchasing notes secured by mortgages.

On or about June 15, 1920, the appellant notified Hunt that a note for $800, secured by mortgage then owned by Hunt and which he had purchased from the corporation, would probably be paid within a few days. On the 18th of this month, Hunt delivered the note and mortgage to the appellant, acting for the corporation for collection, and received a receipt for the same signed "Joseph E. Thomas & Company, Inc.,

by Joseph E. Thomas.'' At this time the appellant suggested to Hunt that he take another mortgage in lieu of the money, but the latter stated that he did not desire to purchase another mortgage but had other use for the money. On the same day that the note and mortgage were left for collection, the one obligated for the indebtedness paid the same by a check in the sum of $800.47, which check was made payable to the order of Joseph E. Thomas & Company, Incorporated. The check was deposited in the account of the corporation with the bank with which it did business, and in due course was paid by the bank on which it was drawn. When the check was received, the corporation surrendered the cancelled note and delivered a satisfaction of the mortgage.

A few days after this, upon inquiry at the office of the corporation, Hunt learned that the note had been paid, but was told that he could not get a check until the return of the appellant to the office, which would be the following Monday, as the latter's signature was required upon the check. On June 26, Hunt visited the office of the corporation and was told by the appellant that the note had been paid and that he would send him a check that afternoon. The check was not sent, and the bookkeeper of the corporation, two or three days later, informed Hunt that it would be necessary for him to see the lawyers of the company about his money. At the time, Joseph E. Thomas & Company was in financial difficulty, which resulted in a receiver being appointed.

Prior to the 26th, when Hunt visited the company's office and was told by the appellant that a check would be sent that afternoon, the latter had been informed by an officer or employee of the company that the bank account needed money and that the bank with which

the company did business had refused to advance any more. This was before the appellant told Hunt that he would send him a check "that afternoon." The appellant had intended to sell mortgages or securities which Joseph E. Thomas & Company had on hand for the purpose of getting money to pay Hunt. The appellant went to Bellingham for the purpose of selling to a client of the corporation certain securities in order that he might pay Hunt, and also another who was in a similar situation. The securities were sold for approximately $2,500 and a cashier's check made out to the purchaser and indorsed by him to a trustee. While the appellant was in Bellingham effecting this sale, a receiver was appointed, and this cashier's check was indorsed to the receiver by the party named thereon as trustee. Hunt did not receive the money which had been paid to the corporation for him. The information in this case charged Joseph E. Thomas, the appellant, individually with the crime of grand larceny.

The first question is whether the appellant was liable criminally in his individual capacity for the act of the corporation in misappropriating the money. The general rule is that, where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer of the corporation that he actually and personally do the acts which constitute the offense, or that they be done by his direction or permission. *People v. England,* 27 Hun (N. Y.) 139; *State v. Parsons,* 12 Mo. App. 205; *Kansas City v. Dickey,* 76 Mo. App. 437; *Rex v. Hendrie,* 11 Ont. L. Rep. 202; 7 R. C. L. 503.

The rule as stated in 14a C. J. 244, is as follows:

"Also at least where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer or servant of a

corporation that he actually and personally do the acts which constitute the offense or that they be done by his direction or permission.''

Applying the rule to the facts of this case, the appellant cannot escape liability for the act of the corporation. He directly participated in the transaction which resulted in the money, which was paid in for Hunt, being placed in the account of the corporation with its bank. He knew at this time that the corporation was in financial difficulties, that the bank account was needing money, and that the bank had refused to make further advancements. It is true that the money was not paid in to him individually, but came in through an employee of the corporation, who, acting under the general direction of the appellant and in accordance with the general policy of the company in handling such matters, deposited the same in the corporation's account. There is authority supporting the holding that the appellant is criminally liable within the rule above stated. In *State v. Cooley,* 141 Tenn. 33, 206 S. W. 182, the defendant was charged with obtaining goods and credit by giving a check on a bank in which there were no funds to pay the same. The check was signed by a corporation of which the defendant was president. The defendant was there charged individually, as here, but the indictment recited the means by which the fraud was committed. It was there held that the defendant was guilty of the crime with which he was charged. In the course of the opinion it is said:

''The statute is broad enough to cover the act of one who obtains money or property with fraudulent intent by means of a check which he has drawn on an account which is not his personal account but on which he is authorized to draw checks. The fact that such account is in the name of a corporation, and the person draw-

ing the check is an officer of the corporation, should not relieve the latter from criminal responsibility for his fraud in using such a check to obtain money or property. An officer of the corporation should not be allowed to escape the consequences of a criminal act done by him, on the ground that it was an official act, and therefore not his, but the act of the corporation.

. . . . . . .

"In the case at bar, the defendant is charged individually with obtaining money, property, and credit from the prosecutor with fraudulent intent. It is averred in the indictment that the means employed to perpetrate this fraud was a check which he 'as president of the Pure Food Grocery Company drew for $50.' It cannot be reasonably contended that, if the Pure Food Grocery Company had been a partnership of which the defendant was a member and whose name he had authority to sign to a check, he would not be the maker or drawer of the check within the contemplation of the provisions of this statute. To hold that the mere fact that the Pure Food Grocery Company was incorporated takes the case out of the statute would be to interpose the legal fiction of the corporation's personality in an instance not within the reason and policy of that fiction. The defendant should not be heard to say in this court that he committed the fraud in his official capacity as an officer of the corporation, and on that ground escape criminal responsibility for his act."

In *State v. Ross,* 55 Ore. 450, 104 Pac. 596, 42 L. R. A. (N. S.) 601, the defendant, with others, was charged with the crime of grand larceny for the act of the Title Guarantee & Trust Company, a corporation, in the misuse of trust funds. The act, as stated, was done by the corporation, of which the defendant was the president and one of the directors. The defendant was charged individually with the act. It was there said:

"One other question remains. Does the evidence tend to show that Ross, as a director or president,

participated in, or was a party to, the conversion? 'Officers, directors, and agents of a corporation, participating in a violation of law in the conduct of the company's business may be held criminally liable therefor.' 21 Am. & Eng. Enc. 896. We think there can be no question of the correctness of this statement. It is equally true that an officer of a corporation is not criminally liable for the unlawful act of the corporation unless he participated in the wrongful act. In *Rex v. Hays,* 14 Ont. L. R. 201, it is said that, 'in the absence of a statute to the contrary, an officer of a corporation cannot be punished criminally for the corporation's unlawful act or default, unless he participates therein as an aider, abettor, or accessory, even though the corporation's offense consists of the violation of a statute which imposes imprisonment as a penalty.' There is a note to this case in 8 Am. & Eng. Ann. Cas. 383, in which the author says: 'The question of the criminal liability of the officers of a corporation for its acts of nonfeasance seems seldom to have arisen. The weight of modern authority . . . . is apparently as laid down in the reported case, viz., that an officer of a corporation is not liable for an offense committed by the corporation, except where he has in some way participated in the illegal act as an aider, abettor, or accessory'—citing several cases to that effect. 3 Thompson on Corp. § 4114, citing *People v. Clark* (O. & T.) 14 N. Y. Supp. 642, is to the same effect. There is no evidence in this transcript tending to show that Ross actually paid out for the Trust Company any of its money, or expressly authorized any one to do so. There is no doubt that if the money had been embezzled from the Trust Company, or applied in any way not intended by the company, or not for its benefit, by any subordinate, then Ross could not be held criminally liable, unless he participated in such diversion thereof, but that is not this case. The record tends to show that the money was in the general deposit funds of the Trust Company, and was paid out in the usual way in payment of legitimate claims against the Trust Company; that is, in the manner contemplated and intended by the com-

pany, and those in direction of its affairs. The agents actually paying out the money had a right to understand that this was to be done; there being no segregation of the money or limitation on the use of it. The Trust Company could only become an active depository of this fund by authority of its officers and board of directors. When the money was received by the company as an active depository, and its directors and officers permitted the money to become a part of the general deposit of the company, without restriction thereon, with knowledge that in so doing the money would be applied to the Trust Company's general uses, this was general authority to subordinates to pay it out in the usual course of the business, and these officers and directors are liable therefor. The evidence tends to show that the disposition of the money by the Trust Company was with their knowledge, consent, and acquiescence, and they thereby participated in its diversion. To this effect is 4 Thomp. on Corp. § 4996.''

As we read the case of *State v. Milbrath,* 138 Wis. 354, 120 N. W. 252, it is directly in point and sustains the charge against the appellant in the present case. In that case the defendant, as a member of a copartnership which was engaged in loaning money, received from a client $300 to loan on real estate security. This loan was made in the name of the person from whom the defendant held a general power of attorney, and was assigned by the defendant to the client. Thereafter a corporation was formed which took over the firm's business and which was controlled by the members of the firm. The money which had previously been loaned by the partnership was, after the organization of the corporation, paid to it in the defendant's presence when the corporation was insolvent and was co-mingled with the corporation's funds and retained by it. It was there held that the intervention of the corporation was a mere instrumentality by which the

embezzlement was accomplished, and did not negative a conversion of the money by defendant. The fact that the money was by the client originally paid to the copartnership does not work a distinction between that case and the present one. The corporation took over the firm's business, and when the money was paid by the party to whom it had been loaned, it came into the corporation and was, as stated, co-mingled with its funds. In the course of the opinion in that case it was said:

"It is further contended that the evidence is insufficient to support the verdict of conviction, in that the receipt of the $300 by the defendant personally is not shown, and, further, that the information charged a conversion not to the use of the corporation, but to the use of the persons who were its officers, including the defendant. From what has been said it must be apparent that there was sufficient evidence of the relation of principal and agent between Conrad Mizer and his successor in interest, Helena Mizer, and the copartnership of C. W. Milbrath & Co. in the first instance. The defendant knew of the payment of the loan by Kafura and executed personally as attorney in fact for Groth at the time a release of the mortgage in question. The money was paid over in his presence, and he knew that it did not belong to him. The evidence is ample to support the contention that it was put in the corporation safe and mingled with the funds of the insolvent corporation and deposited in its bank account with the consent and by the act of the defendant conjointly with Wagner. He must be held to have known of the insolvent condition of the corporation at the time, and that such disposal of the money, would have substantially the same effect as throwing it into the fire. He made no attempt to reinvest the money, but, on the other hand, concealed from his principal the fact that the money had been collected and in this manner disposed of by him by continuing to pay from the corporate funds interest upon this loan to

his principal as if the loan were still outstanding and unpaid. There cannot be much doubt that this constituted a conversion of the money by the defendant and Wagner. But was the money converted to their own use? One may convert money of another to his own use by paying it out upon his private or personal debt. *Guenther v. State* (Wis.), 118 N. W. 640. If this be true, he can convert the money to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management, and of which he is a stockholder and officer in charge. The benefit he receives in the first case by discharge of his personal debt is equal to the whole amount of the money so paid. The benefit which he receives in the second case is not equal to the whole amount of the money so paid. But the extent to which defendant was benefited does not constitute the test. It is paid to his own use in either case. It is paid into that which is a mere instrumentality created by him under sanction of law, but as much under his control and as subservient to his will as the furniture of his office or the books of account in which he records his transactions. Under such circumstances, there is no room for the legal fiction of separate corporate personality or for distinction between the defendant's acts as officer of the corporation and his acts as an independent natural person."

In that case the defendant was charged individually, as here.

It is next claimed that there was error in permitting the cross-examination of the appellant, over his objection, relative to other transactions than that of which he was being tried. It is a general rule, well recognized, that, on the prosecution for a particular crime, evidence which shows, or tends to show, that the accused had committed a crime wholly independent of that of which he is charged is not admissible. To this general rule there are exceptions which have frequently been discussed by this court. Upon direct exami-

nation, the appellant testified that he had made the trip to Bellingham and obtained the check above mentioned for the purpose of paying the Hunt claim, as well as that of another similarly situated. Referring to it, he said: "They were collections that had been made." Upon cross-examination, there was inquiry as to why he had made efforts to pay these particular items and not others of a similar nature, and his attention was specifically directed to two or three others. This was proper cross-examination and did not become improper because it might tend incidentally to show other transactions similar to that with which the appellant was charged.

The other assignments of error are covered by what has been hereinbefore said, and therefore do not require detailed consideration. The principal question is whether the appellant can be held individually for the act of the corporation in the misuse of Hunt's money.

The judgment will be affirmed.

PARKER, FULLERTON, and TOLMAN, JJ., concur.