[Crim. No. 2063. Second Appellate District, Division One.—October 29, 1931.]

THE PEOPLE, Respondent, v. I. HARRY EPSTEIN, Appellant.

Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The first count of the information on which defendant was convicted, charges that defendant committed the crime of grand theft in that he did, at a stated time and place, wilfully, etc., take away $6,000 of the personal property of one David Spiegel. The second count, in similar terms, charges grand theft of the sum of $10,000 of the personal property of one Louise P. Klein.

Defendant was the president and general manager of a corporation called The Beverly Hills Investment and Loan Corporation. This corporation was engaged in a general loan and investment business, including the negotiation and completion of loans of money for its customers. In February, 1930, Spiegel delivered to the Loan Corporation a check payable to the order of said corporation for the sum of $7,000, with the understanding that this money was to be held in escrow and used for the purposes of a real estate loan to one Johnson. The Loan Corporation deposited the check as a credit on its own general account in the Republic Bank, at Hollywood. The check was in due course collected from the bank on which it was drawn, and remained in the Republic Bank to the credit of the Loan Corporation. Later

it appeared that the Johnson loan could not be completed. Thereupon, on March 25th, a new escrow was created wherein Spiegel was to lend to one Hogan $6,000 on certain real property, and $6,000 of the previously deposited $7,000 was transferred to the Hogan escrow; the remaining $1,000 being then returned by the Loan Corporation to Spiegel. The Hogan loan also failed of completion, but Spiegel was unable to obtain return of his money, notwithstanding he demanded the same. The evidence shows that within less than one week from the date of deposit of the Spiegel check in said bank, the total balance of the Loan Corporation in that bank was less than $6,000. Said balance gradually decreased to a very small sum. There is no doubt that the Loan Corporation converted Spiegel's money to its own use.

The transactions relating to the $10,000 of Mrs. Klein are so closely parallel to those of the Spiegel transaction that they require no separate consideration. The case presents on both counts the same questions concerning the liability of Epstein to prosecution for his part in the transactions. Epstein was general manager of the corporation. It was he who determined, on behalf of the corporation, that its escrow moneys should not be kept in a separate account, and that such moneys should be mingled with the moneys of the corporation in its general bank account. All checks on the bank account required his signature together with that of one other officer. When the balance in the bank account ran below the amount of the escrow money, and the Loan Corporation thus began to take and appropriate to its own use the moneys thus held in trust, such appropriation was directly participated in by Epstein by his act in signing those checks. According to his own testimony, at the time of signing such checks he did not know that the Corporation's own funds were exhausted and that he was drawing upon trust funds. But there is abundant circumstantial evidence that he did know that very important fact. Especially significant is the act of defendant in borrowing from an employee of the Loan Corporation first the sum of $1,000 and again the additional sum of $2,500, at which time defendant stated to the employee that the corporation was short of funds for a few days.

In presenting his appeal, appellant suggests that the decision of this case must rest primarily upon one single

question of law which he states thus: "What is the measure and extent of the criminal responsibility of a president and general manager of a corporation for acts done by it in the regular course of its business?" We are assured by counsel for appellant that the following seven cases constitute a complete list of the authorities bearing upon the stated question: *People v. Borchers,* 199 Cal. 52 [247 Pac. 1084]; *State v. Carmean,* 126 Iowa, 291 [106 Am. St. Rep. 352, 102 N. W. 97]; *Weber v. State,* 190 Wis. 257 [45 A. L. R. 928, 208 N. W. 923]. (*Relied upon by appellant.*) *State v. Thomas,* 123 Wash. 299 [33 A. L. R. 781, 212 Pac. 253]; *Milbrath v. State,* 138 Wis. 354 [131 Am. St. Rep. 1012, 120 N. W. 252]. (*Relied upon by respondent.*) *State v. Ross,* 45 Or. 450 [42 L. R. A. (N. S.) 601, 613, 106 Pac. 1022]; *State v. Cooley,* 141 Tenn. 33 [206 S. W. 182]. (*Relied upon by State v. Thomas, supra.*) We shall not extend this opinion by an attempted analysis of those decisions. It is conceded by appellant here, as a deduction from the decisions, that where the corporate entity is in fact but a makeshift, subterfuge, or so-called "dummy" corporation entirely controlled by a person, or a limited number of persons, who perpetrate criminal acts under the guise of, or under the name of, such corporation the corporation entity will be ignored in criminal courts and the said persons will be treated as though they were individuals and had acted as such. But appellant contends for the following additional deduction from the decisions, viz.: That the only other circumstances under which officers may be held criminally responsible for corporate acts are where, with relation to such acts of a criminal nature, the particular officer sought to be charged has personally acted in the premises in such a way concerning that particular matter as would have made him a principal therein under the doctrines pertaining to aiders, abettors and accomplices.

"The general rule is that where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer of the corporation that he actually and personally do the acts which constitute the offense, or that they be done by his direction or permission." (*State v. Thomas,* 123 Wash. 299 [33 A. L. R. 781, 212 Pac. 253], citing cases.) As has been noted herein, appellant signed all of the checks by which the account was depleted. It even appears by the testimony of the witness Henry that

some of the money drawn out was paid on account of appellant's salary. (Rep. Tr., p. 165.) Moreover, appellant was a large stockholder of the Loan Corporation, and the money when used by the corporation for its own advantage was used, indirectly, for his benefit. Upon the facts thus shown, the guilt of defendant is established by the evidence which sustains the implied finding that appellant knew that the corporation was appropriating to its own use the money of the complaining witnesses, and that, so knowing, he performed the acts by which that appropriation was accomplished. The facts, that the corporation was authorized to collect the checks of the complaining witnesses, and was authorized to pay out that money by check in completing the contemplated loans, did not give to the corporation any right to appropriate those funds for its own use.

The judgments, and the order denying motion for a new trial are affirmed.

Bishop, J., *pro tem.*, and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1931.