## No. 16,551.

### HARTSON *v*. THE PEOPLE.
(240 P. [2d] 907)

Decided December 31, 1951.  Rehearing denied January 28, 1952.

1

Mr. SAMUEL CHUTKOW, Mr. NOAH A. ATLER, Mr. J. CORDER SMITH, Mr. ARNOLD M. CHUTKOW, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, Assistant, for the people.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

PLAINTIFF in error was defendant below, and we shall so refer to him. Defendant was charged in three counts of an information. The first count was dismissed. Defendant was convicted under counts two and three. Count two of the information charged: "That Donald F. Hartson on or about the 14th day of February 1949 at and within said County of Logan, State of Colorado, then and there being an officer and agent of Colorado Grain and Bean Company, a corporation, a warehouseman, did and there unlawfully deliver out of the possession of the said Colorado Grain and Bean Company, a corporation, approximately 97,305 pounds U. S. No. 1 Pinto Beans, the said Donald F. Hartson, then and there knowing that a negotiable receipt, the negotiation

of which would transfer the right to the possession of said beans was outstanding and uncancelled, without obtaining the possession of such receipt at or before the time of such delivery which said receipt had theretofore and on or about the first day of November, A.D. 1948, been given to one K. Otsuka, and was then and there outstanding and uncancelled."

Count two of the information was predicated on section 54, chapter 173, '35 C.S.A., the essential portion of which is as follows: "A warehouseman, or any officer, agent or servant of a warehouseman who delivers goods out of the possession of the warehouseman, knowing that a negotiable receipt the negotiation of which would transfer the right of the possession of such goods is outstanding and uncancelled, without obtaining the possession of such receipt at or before the time of such delivery shall * * * be found guilty of a crime * * *."

The charging portion of count three reads as follows: "That Donald F. Hartson on or about the 14th day of February, A.D. 1949 in said County of Logan, State of Colorado, then and there being an agent of Colorado Grain and Bean Company, a warehouseman, did then and there unlawfully and feloniously and with intent to defraud, sell, certain property to-wit: approximately 97,305 pounds U.S. No. 1 Pinto Beans, of the reasonable value of $7,929.00 entrusted to the said Colorado Grain and Bean Company by one K. Otsuka, and further, did then and there, unlawfully and feloniously convert to the use of the said Colorado Grain and Bean Company, the profit or proceeds of the sale of said 97,305 pounds U. S. No. 1 Pinto Beans as aforesaid."

Count three of the information was predicated on section 102, chapter 48, '35 C.S.A., the essential portion of which is as follows: "A carrier, warehouseman, factor, storage, forwarding or commission merchant, or his clerk, agent or employee, who, with intent to defraud, sells, or in any way disposes of, or applies or converts to his own use, any bill of lading, custom house permit,

or warehouse keeper's receipt, entrusted to or possessed by him, or any property entrusted or consigned to him, or the proceeds or profits of any sale of such property, or fails to pay over such proceeds, deducting charges of usual commissions, shall be adjudged to be guilty of embezzlement."

In view of the conclusions we have reached with reference to count two of the information, it is unnecessary for us to consider several specifications directed to the trial and conviction of defendant under count three.

Briefly summarized the specifications are: 1. That neither count two nor three state a crime under Colorado statutes. 2. That the crime defined by section 102, chapter 108, '35 C.S.A., applies only to an individual warehouseman and *his* agent, and not to a corporation and its agents. 3. That the trial court erred in giving and refusing certain instructions. 4. That the evidence failed to sustain the charges in either count and that the verdicts of guilty under each count are contrary to the law and the evidence.

Mr. K. Otsuka, a farmer, delivered his 1948 bean crop, consisting of 97,305 pounds of Pinto Beans, to the Colorado Grain and Bean Company at Sterling, Colorado during the month of September, 1948. November 1, 1948 defendant delivered to Otsuka Exhibit "A," a storage receipt for 97,305 pounds of U. S. No. 1 Pinto beans, the heading of which reads as follows:

"Colorado Grain and Bean Company
Sterling, Colorado
"D. F. Hartson, Owner and Manager
Negotiable Grain Storage Receipt
"No. 3     Sterling, Colo., November 1, 1948"

The evidence disclosed that when these beans were delivered to the warehouse defendant stated to Otsuka that he had room for them in the Sterling warehouse, and if space could not be provided there, he had a place for them elsewhere. The evidence shows that at no time were any of the Otsuka beans stored elsewhere. All of

the beans transferred by defendant were paid for by consignees. Shipments were made to points in nearby states, including Colorado. It is patent that the defendant was selling vast quantities of beans on the market all during the time Otsuka's beans were supposedly in storage. Counsel for plaintiff in error frankly admits in his brief that the evidence shows the defendant almost immediately after receipt of the Otsuka beans, disposed of them, and his corporation received the proceeds of such sales. He asserts, however, that defendant did not appropriate the proceeds to *his* own use.

The Colorado Grain and Bean Company was a Colorado corporation. Its outstanding stock consisted of 8002 shares, of which defendant owned 8000 shares. Defendant was president, manager, and in active charge of operations of the corporation. The record discloses that all of its transactions were handled by defendant.

A receiver for the Colorado Grain and Bean Company was appointed February 21, 1949, it having been adjudged a bankrupt. The receiver testified that 16,075 pounds of beans of all varieties were on hand when he took possession of the company's assets. The records show that the Colorado Grain and Bean Company shipped out 2,014,808 pounds of beans between September 12, 1948 and February 22, 1949, and that at that time pinto beans were worth about $8.00 per hundred pounds.

From the case as made by the prosecution it appears that before the warehouse receipt Exhibit "A" was issued, the beans belonging to Otsuka had been shipped out by defendant. From records of the company showing receipts and shipments of beans, it is evident there were practically no beans in its possession at the time the receipt was issued. Defendant offered no evidence in his own behalf.

The offense defined in section 54, supra, consists in delivering "goods out of the possession of the warehouse-

man" knowing that a negotiable warehouseman's receipt is outstanding and making such delivery "without obtaining the possession of such receipt." This statute was, among other things, intended to protect against the delivery of goods by a warehouseman to one who was not entitled thereto, because the original bailor had negotiated the warehouse receipt. Under the facts as disclosed by this record the evidence did not sustain the charge as stated in the second count of the information. It fairly appears from the evidence that when the beans were delivered from the possession of defendant there was no outstanding warehouseman's receipt, either negotiable or nonnegotiable in existence. This conclusion regarding count two makes it unnecessary for us to consider the other specifications urged in connection therewith.

A different situation is presented by the record as it relates to count three. Defendant urges that because the beans were delivered to the corporation and not to him as an individual, and because it was not shown that defendant had personally profited by the sale of the beans, he cannot be adjudged guilty under section 102, supra.

We are convinced that a corporate officer may be criminally liable for the embezzlement or larceny of property of a third person through a corporate act where the act was performed by the individual officer, or at his direction, or by his permission.

In *State v. Thomas,* 123 Wash. 299, 212 Pac. 253, the Washington court, quoting from *Milbrath v. State,* 138 Wis. 354, 120 N.W. 252, stated:

"But was the money converted to their own use? One may convert money of another to his own use by paying it out upon his private or personal debt. *Guenther v. State* (Wis.) 118 N.W. 640. If this be true, he can convert the money to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation *which is under his control and management,* and *of which he is a stockholder and officer in charge.*

* * * But the extent to which defendant was benefited does not constitute the test. * * * It is paid into that which is a mere instrumentality created by him under sanction of law, but as much under his control and as subservient to his will as the furniture of his office or the books of account in which he records his transactions. Under such circumstances, there is no room for the legal fiction of separate corporate personality or for distinction between the defendant's acts as officer of the corporation and his acts as an independent natural person." (Emphasis supplied.)

In *Adams v. People,* 25 Colo. 532, 55 Pac. 806, we said: "The mere failure or neglect of the persons or officers, in the circumstances specified, to pay into the county treasury moneys collected by them constitutes the offense, whatever be its character, for which the punishment is inflicted, without regard to the question whether or not it has been appropriated or converted by them to their own use."

In the same case it was said: "It would be competent, we suppose, for the legislature to prohibit the doing of a certain act and designate the act prohibited embezzlement, even though this notion of conversion or appropriation was absent."

Under section 102, supra, defaults of a warehouseman's agent are expressly made a crime if he "with intent to defraud" sold or in any way disposed of the goods bailed to his principal. By the plain and unequivocal language of this section, enacted in 1885, the agent is liable. See, *People v. Sherman,* 133 N. Y. 349, 31 N.E. 107.

The record in the instant case clearly establishes that defendant was the Colorado Grain and Bean Company. In Exhibit "A" it is stated that he is the owner thereof. To take refuge under the cloak of a corporation would defeat the purpose of section 102, supra. The General Assembly by the very language of that section contemplated that an agent or representative of the warehouse-

man might by some legal fiction seek to avoid the consequences of his acts, and the legislature closed that avenue of escape by the express terms of the enactment.

In *State v. Edwards*, 345 Mo. 929, 137 S.W. (2d) 447, this pertinent language appears: "Nevertheless, the rule is that 'to make out a case of embezzlement, accused need not appropriate the property to his own use, but is guilty if he fraudulently appropriates it to the use of another' [20 C.J. sec. 16 p. 428, 429.] More explicitly it is said: 'To appropriate "to one's own use" does not necessarily mean to one's personal advantage. Every attempt by one person to dispose of the goods of another, without right, as if they were his own is a conversion to his own use.' " In support of this pronouncement, many authorities are cited in the opinion.

In the information against Hartson it was charged that defendant committed the embezzlement as agent of the corporation, which the evidence disclosed he owned, controlled and managed.

In a prosecution for illegal sale of intoxicating liquor where the proceeds of the sale went to a corporation, a conviction of the corporation's agent was sustained in *United States v. Bach*, 151 F. (2d) 177, 179. The Court said: "Corporate agents may be criminally liable individually for acts done by them on behalf of the corporation, even though the corporation may or may not be liable."

Many authorities on this question appear in an annotation in 33 A.L.R. 787 under the caption, "Individual criminal responsibility of officer or employee for larceny or embezzlement, through corporate act, of property of third person." We approve the holdings in these decisions. In the instant case defendant is the only person or entity involved in the transaction of which complaint is made, for he *was* the corporation.

Was a demand by Otsuka for the return of his beans necessary before the filing of the information? We think not. Nowhere in section 102 is a demand re-

quired. No formal demand was necessary when Otsuka discovered that the company was bankrupt and its assets were in the possession of the receiver appointed by the court. Such a demand would have been useless under the circumstances of this case. The warehouseman had put it out of his power to comply with a demand, were one made. The law does not require a vain and useless act as a preliminary to bringing a defendant to the bar of justice.

We have carefully reviewed the instructions tendered by defendant and refused by the court and conclude that no error was committed by its refusal to instruct the jury as so requested. The trial court fairly and adequately instructed the jury and protected the rights of defendant. We have examined the other specifications and find them without merit.

The judgment under count two is reversed and the cause remanded with direction to the trial court to vacate the same. The judgment under count three is affirmed.