# STATE v. ADELBERT McBRIDE.
# STATE v. WILLIAM J. HORRIGAN.[1]

April 30, 1943. .

Nos. 33,337, 33,449.

[1]Reported in 9 N. W. (2d) 416.

124

*William J. Horrigan,* for appellants.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

YOUNGDAHL, JUSTICE.

Defendants McBride and Horrigan were convicted in municipal court of the offense of selling intoxicating liquor without a license in violation of an ordinance of the city of Minneapolis. Although tried separately, this court made its order consolidating the two actions for purposes of appeal.

Defendant Horrigan, as president and treasurer of the National Drug Company, a corporation, managed a retail drugstore doing business under the tradename of the Federal Drug Company, which was owned by the corporation and located in the city of Minneapolis. The offices of the corporation and stock ownership were held by Horrigan and members of his immediate family. Defendant McBride, a registered pharmacist, was employed by the corporation and worked under Horrigan's supervision at the Federal Drug Company. On April 19, 1942, one Twellos, a cab driver, upon request, procured for and sold to police officer Dahl of the

city of Minneapoalis one pint of whiskey. The delivery of the liquor to Dahl was made within a few feet from the entrance to the drugstore which Horrigan managed and where McBride was employed and close to where Twellos's cab was parked. After paying for his purchase, Dahl turned down the street and was met by officer Hart of the morals squad. The two returned to the drugstore, placed the defendants under arrest, searched the premises, and found a considerable quantity of liquor, aggregating some 382 pints and 22 quarts of whiskey, in a storeroom back of the prescription counter and but a few feet away from Horrigan's private office. It is admitted that the corporation did not have a license to sell intoxicating liquors nor an alcohol permit, nor did McBride as a pharmacist have a license from the State Board of Liquor Control to have whiskey.

The evidence relating to the actual sale is conflicting. Officer Dahl testified that he entered the drugstore, approached McBride and asked to purchase a pint of whiskey, and was directed to talk to the cab driver whose automobile was parked outside the entrance to the drugstore. He went outside, made a similar request of Twellos, gave him $1.50 in cash, and waited while Twellos went into the drugstore and returned in a minute or two with the pint of whiskey, which Dahl accepted. Officer Hart joined Dahl, who then apprised Twellos that they were officers and asked him to come into the drugstore. Twellos informed the officers that he had purchased the liquor from McBride, who upon arrest immediately called his manager, Horrigan, by telephone, requesting him to come down to the drugstore. This Horrigan did, and both McBride and Horrigan denied making the sale or having any knowledge relating thereto. In regard to the large stock of liquor seized on the premises, McBride and Horrigan claimed the merchandise belonged to the Mill City Drug Company, a licensed liquor store, whose assets were held by one Dougherty, as assignee for the benefit of creditors and for whom Horrigan served as attorney, and that the liquor was stored there but temporarily while the Mill City Drug Company was remodeling its store. At the

trial, Twellos was positive in his testimony that he made the liquor purchase from McBride and that he had had similar transactions previously.

Having found both defendants guilty, the court imposed upon each a sentence of 90 days in the workhouse. McBride moved (1) to amend the reporter's transcript of the evidence in his case by adding the testimony of officer Hart as given in the Horrigan case; and (2) for an order dismissing the action, or, if denied, then for an order granting a new trial. Horrigan likewise moved (1) to amend the transcript of the evidence in his case by adding his own testimony as given in the McBride case; and (2) for an order dismissing the action, or if denied, then for an order granting a new trial. The motions in each case were denied in their entirety, and defendants appealed from the orders denying their respective motions.

Defendants' original record on appeal did not comply with Rule VIII(2) of this court (212 Minn. xli) with respect to matters to be included therein, and the case was not properly before us. State v. Sterling, 173 Minn. 610, 216 N. W. 533. However, after counsel for the state pointed out this defect, defendants included in their reply brief a certified copy of the docket record or register from the municipal court so as to complete the record. While the record as it now appears is in substantial compliance with the rules of this court, we do not approve this irregular practice.

As to the respective appeals of the defendants, the order of the court refusing to add the additional testimony in each case is a nonappealable order. See 1 Dunnell, Dig. & Supp. § 309; Sunvold v. Melby, 82 Minn. 544, 85 N. W. 549. Likewise, the orders refusing to dismiss the actions are nonappealable. *Id.* § 309; Gottstein v. St. Jean, 79 Minn. 232, 82 N. W. 311. However, inasmuch as defendants are properly here on appeal from orders denying a new trial and have assigned as error the foregoing rulings of the trial court, they will be given consideration.

In view of the evidence adduced with respect to the actual sale of intoxicating liquor by McBride and the relationship existing

between Horrigan and McBride by reason of the latter's employment and Horrigan's management of the drug company and immediate supervision of McBride, we feel that the trial court was justified in denying defendants' motion to dismiss their respective causes of action. There was no abuse of discretion in denying McBride's motion to add to his settled case the testimony of officer Hart as given in the Horrigan case. McBride points to the inconsistency in Hart's testimony as to his relative position with reference to the entrance to the drugstore at the time Twellos came out with the liquor. This is not a material factor in the consideration of the case, and such other minor inconsistencies as we see in the record are wholly inconsequential. We feel similarly with respect to Horrigan's motion to add to his own settled case the testimony he gave in the McBride case. This defendant had the opportunity to testify in his own behalf, and, having declined to do so, we do not believe he is in a position now to claim disadvantage or prejudice by the court's denial of his motion.

For the sake of clarity and simplification, we shall discuss the remaining assignments of error separately as they relate to the individual defendant involved.

### McBride Case

The principal question raised by this defendant goes to the sufficiency of the evidence to sustain his conviction of selling liquor without a license. A careful study of the record indicates that there is abundant support therein for the conviction. The state produced positive and credible testimony that McBride sold to one Twellos, a cab driver, a pint of whiskey in violation of the ordinance. In addition, there was a strong corroborating factor in the finding of such a large quantity of liquor on the premises of the drug company, which held no license either to sell liquor or to issue prescriptions therefor. We have recently held that the finding of a large quantity of liquor upon premises where there is no license to sell permits an inference that it was there for the purpose of sale rather than for the use of the occupant. State v.

Ronnenberg, 214 Minn. 272, 273, 7 N. W. (2d) 769. True, in this case there was the customary denial of sale by the defendants. The explanation offered at the trial with respect to the large amount of liquor found on the premises does not deserve credibility. McBride produced as a witness his codefendant, Horrigan, who testified he was the attorney for the assignee of the creditors of the Mill City Drug Company, which operated with a liquor license a few doors away. His claim was that the liquor was stored there only temporarily while the Mill City Drug Company remodeled its store. The court was justified in not giving credence to this attempted explanation. There was involved here the usual conflicting issue of fact, which was determined adversely to defendants by the trial court. We here follow the rule that if there is reasonable evidence to sustain the conviction, it cannot be disturbed on review. State v. Ronnenberg, *supra*. We find no justification for McBride's claim of error with regard to the alteration of the label on the pint bottle of whiskey offered in evidence at the trial and that the testimony was that it was purchased at Third and Marquette rather than Third and Hennepin, the street address of the Federal Drug Company. This was clearly a mistake that has no material bearing on the main issue here involved.

## HORRIGAN CASE

What we have said with reference to the sufficiency of the evidence to show a sale of liquor by defendant McBride need not be repeated here on our consideration of the Horrigan appeal. We have but one other issue for determination on this appeal, namely, whether the evidence implicates Horrigan in the charge of selling liquor without a license in violation of the ordinance. Horrigan asserts that even though a sale of liquor was proved as to McBride, there is no evidence to associate or connect him with the sale; that the company which owned and operated the drugstore was a corporation, and, although he was president thereof, he was not present when the sale was made; that, as such officer, he cannot be charged with the criminal acts of one of the corporation's

agents or servants of which he had no knowledge. The state, on the contrary, maintains that the corporation was a family affair; that Horrigan was the dominating and active individual in exclusive charge and control of its operation; that he knew the liquor was stored on the premises; and that it was there for the illegal purpose of sale in violation of the ordinance. It is undisputed that the officers found 382 pints and 22 quarts of assorted liquor in a storeroom behind the prescription counter. As previously stated in the McBride case, the state further proved a direct sale of a pint of whiskey by an employe of the drug company who was under defendant Horrigan's immediate supervision and control. There were 83 pints and 10 quarts of Kessler's brand whiskey found on the premises, the same brand sold by McBride.

It is of no assistance to Horrigan to suggest that McBride was hired by the corporation. A corporation is only "an artificial person, created by law, or under authority of law, from a group or succession of natural persons." 2 Dunnell, Dig. & Supp. § 1969, and cases there cited, and "if it is to function at all in its chosen or granted field of operation, it must act through or by means of human direction. It is impotent otherwise." Rommel v. New Brunswick F. Ins. Co. 214 Minn. 251, 258, 8 N. W. (2d) 28, 32. Horrigan did not testify in his own behalf, nor was any explanation offered in his trial as to why such a great quantity of liquor was kept upon the drugstore premises. As the active manager of the business, there is a reasonable inference that he had knowledge that illicit sales of liquor were being made upon the premises. The evidence, therefore, satisfactorily supports an inference that Horrigan had liquor in his possession for purposes of sale without a license. Under the ordinance, a sale includes having liquor in possession for the purpose of sale. The National Drug Company, the corporate legal entity operating this business, had no license to sell liquor nor any permit to issue prescriptions therefor. The large quantity of liquor found on the premises without explanation by Horrigan, together with the evidence of actual sale by McBride, who was under Horrigan's supervision and control, was

sufficient to justify a finding that Horrigan as an individual, separate and apart from the corporation, was guilty of illegal trafficking in liquor in violation of the ordinance. All who participate directly or as accessories in the violation of a municipal ordinance prohibiting the keeping for sale of intoxicating liquor are principals. 22 C. J. S., Criminal Law, p. 145, § 81. "In * * * misdemeanors there is no distinction between principals and accessories; all concerned in the commission of the offence are deemed principals, and indicted and punished accordingly." State v. Beebe, 17 Minn. 218, 224 (241, 247).

Horrigan makes much of the fact that because he was not present when the liquor was sold and knew nothing of the sale he cannot be held accountable for the conduct of McBride who was acting for the corporation. He overlooks the fact that he employed McBride and controlled and supervised his activities. There is substantial reason here for believing that Horrigan was attempting to use a corporate legal entity as a shield of protection for himself in his unlawful activity of selling liquor. This court held in Lake Park D. Co. v. Steenberg Const. Co. 201 Minn. 396, 402, 276 N. W. 651, 655, that in some cases a court is justified in "disregarding the corporate entity altogether. Where the corporation is used by an individual as an instrument of fraud, or to hinder and delay and, if possible, defraud creditors, or for other wrongful purposes, 'courts will go as far as necessary in disregarding the corporation and its doing in order to accomplish justice.' " Again in Matchan v. Phoenix L. Inv. Co. 159 Minn. 132, 138, 198 N. W. 417, 420, the court said: "Such a corporation is a mere parasitic growth, a mass of fungus, which will be lopped off clean whenever necessary to sound results." Although a director or other officer of a corporation is not ordinarily criminally liable for acts performed by other officers or agents of the corporation, he is criminally liable for his own acts, although done in his official capacity, if he participated in the unlawful act, either directly or as an aider, abettor, or accessory. 13 Am. Jur., p. 1027, § 1100; 3 Fletcher, Cyc. Corp. (Perm. ed.), p. 877, § 1348. Rig-

rish v. State, 178 Ind. 470, 99 N. E. 786. In State v. Brown, 155 Minn. 245, 193 N. W. 169, although involving a partnership, the court held that a person may be found guilty of selling liquor although it was not shown that he participated in the particular sale.

It is the universal rule that an officer or agent of a corporation cannot avoid responsibility for his act on the ground that it was done in his official capacity, nor can he assert that acts in corporate form are not his acts merely because they are carried on by him through the instrumentality of the corporation which he controls and dominates and which he has employed for that purpose. State v. Milbrath, 138 Wis. 354, 120 N. W. 252, 131 A. S. R. 1012; State ex rel. Attorney General v. Standard Oil Co. 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 A. S. R. 541; Kaufman v. United States (2 Cir.) 212 F. 613, Ann. Cas. 1916C, 466; Overland Cotton Mill Co. v. People, 32 Colo. 263, 75 P. 924, 105 A. S. R. 74; State v. Ross, 55 Or. 450, 104 P. 596, 106 P. 1022, 42 L.R.A. (N.S.) 601, 613, appeal dismissed, 227 U. S. 150, 33 S. Ct. 220, 57 L. ed. 458; State v. Thomas, 123 Wash. 299, 212 P. 253, 33 A. L. R. 781; State v. Cooley, 141 Tenn. 33, 206 S. W. 182; Rigrish v. State, 178 Ind. 470, 99 N. E. 786, *supra*.

We conclude that there is sufficient evidence to sustain the conviction of defendants and that there should be an affirmance.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or determination of this case.