STATE of Minnesota, Respondent,

v.

Gerald and Virginia WILLIAMS,
Appellants.

No. 81–255.

Supreme Court of Minnesota.

Aug. 27, 1982.

Smith, Juster, Feikema, Malmon & Haskvitz and J. Christopher Cuneo, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Gary Hansen, Richard D. Hodsdon and Barbara Gill, Sp. Asst. Attys. Gen., St. Paul, John R. Leitner, County Atty., Aitkin, for respondent.

WAHL, Justice.

Defendants Gerald and Virginia Williams were each found guilty by a district court jury of theft of over $2,500 by false representation, a felony.[1] Virginia Williams was also found guilty of two counts of issuance of worthless checks, a misdemeanor.[2] The trial court sentenced Gerald Williams to serve from 0 to 5 years in prison and stayed the execution of the sentence on the condition that he either serve 180 days in jail or devote 540 hours to community service and that he pay restitution in an amount to be determined by the probation agent. Virginia Williams received the same sentence as her husband for the theft charge and a concurrent 60-day jail sentence for the two misdemeanors. We reverse.

In August 1978, Gerald and Virginia Williams became the sole owners, operators and officers of North Country Log Homes, Inc. (North Country), a business located in McGregor, Minnesota, which sold precut log home packages to distributors. In late 1978, Gerald Williams and an employee visited Montana in search of a supply of logs. They met with Louis Flake, owner of K & L Mills, and discussed the possibility of buying logs from him. After returning to Minnesota, Williams placed an order with Flake for one truckload of logs. A North Country employee drove to Montana and picked up the logs, which were paid for, as agreed, by a cashier's check.

---

1. Minn.Stat. §§ 609.52, subds. 2(3)(a) and 3(1), (5) (1980), and 609.05 (1980).

2. Minn.Stat. § 609.535, subd. 2 (1980).

A short time later, Gerald Williams agreed with Louis Flake that an independent trucker from Montana, Boyd Williams, would deliver another load of logs to North Country. On November 18, 1978, that delivery was made. At Gerald's direction, Virginia Williams issued one check in the amount of $1,042.10 to Boyd Williams for payment of his hauling services and one check in the amount of $4,027.60 to K & L Mills for the logs. Both checks were given to Boyd Williams.

A few days later, Gerald Williams called Flake and inquired about receiving two loads of logs per week. K & L Mills was closing for the winter, and Gerald agreed to take the last remaining load of logs. Boyd Williams arrived in McGregor on November 24, 1978, with that load and noticed that the November 18th load had been removed from North Country's plant. At Gerald's direction, Virginia again issued two checks drawn on the North Country checking account. Boyd received one check in the amount of $1,043.10 for delivering the logs and carried a second check in the amount of $3,262.32 back to Louis Flake as payment for the logs. Boyd Williams and Louis Flake deposited the checks in their own accounts, but all four checks were returned because of nonsufficient funds in the North Country checking account. At trial a bookkeeper from the bank in which North Country had its checking accounts testified that at least two statements had been sent to North Country informing it that the checking account balance on October 1, 1978, had been $92.33 and that the balance was the same when the four checks were issued in November.

The Williamses testified that, at the time they ordered the November 18th load, they had accounts receivable. Furthermore, they received a check for $7,000 in early December 1978 from one of their distributors, Newman, for a precut log home package they had delivered. Newman stopped payment on this check when the logs were discovered to be defective. The Williamses contended at trial that the defective logs had come from K & L Mills and that they were not obligated to pay for nonconforming goods.

Flake made inquiries regarding the dishonored checks, then, with Boyd Williams, hired an attorney to pursue collection on the checks. The attorney, on January 9, 1979, sent a certified letter demanding payment. Virginia Williams wrote to Flake, stating that an effort would be made to make the checks good immediately. She enclosed two more checks issued on another North Country account to Boyd Williams, which checks were also dishonored.

In March 1979, North Country's attorney communicated to Flake that the logs delivered on November 18 and 24 had been defective. While the parties were negotiating, during 1979, North Country Log Homes, Inc. was forced into involuntary bankruptcy. Flake and Boyd Williams filed claims with the bankruptcy court. Settlement negotiations continued. When no settlement could be reached, Flake's attorney brought the matter to the attention of the Aitkin County Attorney, who turned the matter over to the Attorney General's Office because of a conflict of interest.

Criminal charges were filed on February 29, 1980. The attorney who had represented North Country in its dispute over payment for the logs represented the Williamses on the criminal charge. One month before trial, the special assistant attorney general prosecuting the Williamses notified their attorney by letter that he might be called as a witness. Although it was determined immediately before trial that the Williamses' attorney would not be called to testify by the state, the Williamses were never advised of this possible conflict of interest.

The Williamses' motion for acquittal at the close of the state's case-in-chief, on the ground that they could not be held criminally liable because the corporation had issued the checks, was denied. Defense counsel's objections to several of the court's instructions, including the instruction on the elements of theft by false representation, were overruled. The jury found the Williamses guilty on all counts as charged. The Wil-

liamses retained a new attorney, whose motion for a new trial was denied.

The appeal raises numerous issues as to theft by false representation and issuance of worthless check charges.

*Theft by False Representation:*

█ 1. We address first the Williamses' contention that they cannot be held criminally liable because it was the corporation, North Country Log Homes, Inc., which issued the checks that gave rise to the prosecution. As we held in *State v. McBride*, 215 Minn. 123, 9 N.W.2d 416 (1943), a corporate officer is criminally liable for his own acts, even if done in his official capacity, and he is liable either directly as a principal or as an aider and abettor. The Williamses are not shielded by the corporation, because:

It is the universal rule that an officer or agent of a corporation cannot avoid responsibility for his act on the ground that it was done in his official capacity, nor can he assert that acts in corporate form are not his acts merely because they are carried on by him through the instrumentality of the corporation which he controls and dominates and which he has employed for that purpose.

*Id.* at 131, 9 N.W.2d at 420 (citations omitted). We have followed *McBride* in *State v. Strimling,* 265 N.W.2d 423 (Minn.1978); *State v. Ruud,* 259 N.W.2d 567 (Minn.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); and *State v. Lux,* 235 Minn. 181, 50 N.W.2d 290 (1951).

2. The central, and dispositive, issue on the theft charge is whether the jury was properly instructed on the element of intent. That instruction was crucial, and it was flawed. It is clear from the record before us that a properly instructed jury would have had great difficulty in finding that the state had proved beyond a reasonable doubt that the Williamses possessed the requisite specific intent to commit theft by false representation.

█ Intent to defraud is an essential element of theft by false representation. "[I]t is essential that the drawer should have not only knowledge of the insufficiency of his funds or credit, but an intent to defraud." Annot., 95 A.L.R. 486 (1935) (citations omitted); *see State ex rel. Hastings v. Bailey,* 263 Minn. 261, 116 N.W.2d 548 (1962); *People v. Radich,* 111 Cal.App. 779, 294 P. 1 (1930). Failure to instruct on the element of intent to defraud was raised in the motion for a new trial and is an error of fundamental law or controlling principle permitting review by this court. *See State v. Keaton,* 258 Minn. 359, 365, 104 N.W.2d 650, 655 (1960). Appellants were "entitled to have all the elements of the offense with which [they were] charged submitted" to the jury. *State v. Carlson,* 268 N.W.2d 553, 560 (Minn.1978); see *State v. Crace,* 289 N.W.2d 54 (Minn.1979). We have held that "failure to give an appropriate instruction on a matter of fundamental law substantially and materially prejudiced the defendant and that he is entitled to a new trial." *State v. Hembd,* 305 Minn. 120, 130, 232 N.W.2d 872, 878 (1975) (trial court failed to instruct on defense of good motive).

The Williamses were charged with violation of Minn.Stat. § 609.52, subd. 2(3)(a) (1980), which states that anyone commits theft who:

(3) Obtains for himself or another the possession, custody or title to property of a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes without limitation:

(a) The issuance of a check, draft, or order for the payment of money or the delivery of property knowing that he is not entitled to draw upon the drawee therefor or to order the payment or delivery thereof.

The trial court, relying on the Criminal Jury Instructions Guide, gave two instructions which purported to state the law as adopted in Minn.Stat. § 609.52, subd. 2.

CRIMJIG 16.05 was presented to the jury as follows:

The defendants are charged with the crime of obtaining property of another by false representations. And the laws of Minnesota provide that whoever obtains or assists in obtaining for himself or another the possession, custody, or title of the property of another person by intentionally deceiving the other with a false representation which is known by him to be false and which is made with the intent to defraud and which does defraud the person to whom it is made is guilty of theft.

This instruction is termed the "Defined Instruction." CRIMJIG, Explanatory Note at xi. The trial court continued with the "Elements Instruction," CRIMJIG 16.06:

A false representation includes the issuance of a check or checks by one who knows he is not entitled to issue it. We are speaking now of Count No. One. And the elements of this crime require the following:

First, defendants either together or singly, either way—remember, I told you they are separate—the defendants must have obtained for themselves or their company the possession, custody, or title of the logs owned by Louis Flake doing business as the K & L Mills.

Second, one of the defendants must have intentionally issued a check to obtain the logs. A person issues a check by signing it and delivering it directly or indirectly to another.

Third, the defendant must have known—or the defendants as the case

may be—must have known or believed that he was not entitled to issue the check or checks. *A person is not entitled to issue a check if the funds in the checking account are not sufficient to cover the amount of the check.*[3] [The emphasized sentence was added by the court to the third element as stated in the Jury Instruction Guide.]

Fourth, one of the defendants must have intended that Mr. Flake or his representative believed that defendant was entitled to issue the check or checks.

Fifth, Mr. Flake or his representative must have believed that defendant was entitled to issue the check or checks and in reliance on that believed he must have given—in reliance on that belief, he must have given defendants or another possession, custody, or title to the logs.

Sixth, the defendants' actions must have taken place in Aitkin County.

If you find that each of these six elements has been proved, defendants are guilty of theft.

Appellants contend that the above instructions fail to require a finding by the jury that the appellants had acted with the "intent to defraud." As the state notes, CRIMJIG 16.05 is a proper statement of the law. However, when we set out in tandem the elements of Minn.Stat. § 609.52, subd. 2(3) and CRIMJIG 16.06, the Elements Instruction, it becomes apparent that the Elements Instruction does not require the jury to find that a defendant acted with specific intent to defraud in order to render a verdict of guilty to a felony theft.

| Minn.Stat. § 609.52, subd. 2(3) | Elements Instruction |
|---|---|
| 1. Whoever * * * [o]btains * * * the possession * * * to property of a third person by | 1. [D]efendants * * * obtained * * * possession * * * of the logs owned by Lewis Flake. |

**3.** While this emphasized sentence broadly states the statutory prohibition against the issuance of worthless checks, we note that Minn.

Stat. § 609.535 (1980) requires proof of intent that the check not be paid.

Minn.Stat. § 609.52, subd. 2(3) | Elements Instruction

2. intentionally deceiving him with a false representation which is known to be false,

2. [O]ne of the defendants * * * intentionally issued a check to obtain the logs * * *,

3. know[ing] * * * that he was not entitled to issue the check * * *,

4. intend[ing] that Mr. Flake * * * believe[ ] that defendant was entitled to issue the check * * *.

3. made with intent to defraud,

4. and which does defraud the person to whom it was made.

5. [Flake] * * * must have believed that defendant was entitled to issue the check * * * and * * * in reliance on that belief, he must have given defendants * * * title to the logs.

6. [D]efendants' actions must have taken place in Aitkin County.

---

Under the CRIMJIG 16.06 instruction given, a jury is instructed to find guilty of theft a defendant who (1) obtained another's property by (2) issuing a check (3) knowing his account did not have sufficient funds (5) where the other party believed the account had adequate funds and relied on that belief in transferring the property, despite the fact that the defendant intended to cover the check (for instance, with accounts receivable or receipts from the sale of goods obtained by issuing the check). Thus, a defendant can be found criminally liable without the jury having found the statutorily required element of specific intent to defraud, i.e., that the defendant, at the moment he issued the check, had the intention to defraud the other party by permanently depriving him of his property by never covering the check.

■ It is true, as the state argues, that in construing a charge it must be viewed in its entirety and reviewed as a whole, *State v. Billington*, 241 Minn. 418, 426, 63 N.W.2d 387, 392 (1954). In this case, however, we view the absence of the element of intent to defraud from the Elements Instruction, CRIMJIG 16.06, which "breaks [the] crime down into its essential elements, which are numbered so that the jury may more easily remember or refer to them," CRIMJIG, Explanatory Note at xi, to be such a serious gap in the instructions as to require reversal.

*Issuance of Worthless Checks*:

Virginia Williams was charged separately and convicted of two misdemeanor counts with regard to the checks she issued, at Gerald's direction, to Boyd Williams for hauling the loads of logs on November 18, 1978, and November 24, 1978. She argues, among other issues, that the trial court erred in its instruction on issuance of a worthless check. We agree.

■■ The trial court properly instructed the jury that an element of issuance of a worthless check is that the defendant must have intended at the time of issuing the check that it would not be paid. The court then instructed the jury, paraphrasing the language of Minn.Stat. § 609.535 (1978):

It is enough to prove such an intention if you find beyond a reasonable doubt that at the time defendant issued the check the checking account did not have sufficient funds to pay the check and that the defendant did not cause the check to be paid within five business days of receiving certified mail that the check had not been paid.

This language establishes a presumption. In the criminal law, presumptions are used to encourage the jury to find certain "presumed facts," with respect to which no direct evidence is presented, solely because the "basic facts" have been proved. *See, e.g., Barnes v. United States*, 412 U.S. 837, 840 n.3, 93 S.Ct. 2357, 2360 n.3, 37 L.Ed.2d 380 (1973); *United States v. Romano*, 382 U.S. 136, 139, 86 S.Ct. 279, 281, 15 L.Ed.2d 210 (1965). However, the presumption must not undermine the factfinder's responsibility at trial to find the ultimate facts beyond a reasonable doubt. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Presumptions may be permissive or mandatory. The former allows, but does not require, the trier of fact to infer the presumed fact from proof by the prosecution of the basic fact. The latter, mandatory presumptions, are troublesome evidentiary devices because they "tell[ ] the trier [of fact] that he or they *must* find the [presumed] fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *County Court of Ulster County, New York v. Allen*, 442 U.S. at 157, 99 S.Ct. at 2224 (citations omitted) (emphasis in original).

■■■ The state must establish every element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Where intent of the accused is an ingredient of the crime, its existence is a jury issue, and "the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act." *Morissette v. United States*, 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952). An instruction that directs the jury to find intent from basic facts, without qualifying instructions that permit the jury to weigh evidence introduced by the defendant to rebut the presumption, invades the province of the factfinder and relieves the state of its burden to prove beyond a reasonable doubt every element of the crime charged.

Jury instructions generally will control whether the presumption involved is permissive or mandatory. *County Court of Ulster County, New York v. Allen*, 442 U.S. at 157 n.16, 99 S.Ct. at 2224 n.16. We consider here whether the instruction given the jury contained a mandatory presumption on the element of intent.[4]

■■■ The language of the jury instruction establishes a presumption by requiring the jury to find intent not to pay for the check, the presumed fact, from two basic facts: a determination that North Country's checking account did not have sufficient funds to cover the checks issued, and a determination that the checks were not paid within 5 days of notice that they had not been paid. The jury was not instructed that it could consider defendant's explanation as to why the checks were not paid after notice of dishonor. Nor was the jury instructed that it could disregard the presumption. *See County Court of Ulster County, New York v. Allen*, 442 U.S. at 166 n.29, 99 S.Ct. at 2229 n.29; *People v. Lemmons*, 40 N.Y.2d 505, 387 N.Y.S.2d 97, 354 N.E.2d 836 (1976). In *State v. Ferraro*, 290 N.W.2d 177, 179 (Minn.1980), we noted that such qualifying instructions prevented the jury from confusing a permissive inference for a mandatory presumption. Instructions that allow the trier of fact to remain free to credit or reject inferences do not violate principles of due process. In the present case the jury was instructed to find intent upon the proof of two basic facts. This is tantamount to an irrebuttable presumption that denies due process. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Reversed and remanded.

KELLEY, J., took no part in the consideration or decision of this case.

---

4. The constitutionality of Minn.Stat. § 609.535 (1980) is not being questioned.