**Leonard H. GREENE, et al.,**
**Respondents,**

v.

**ENVIRONMENTAL DEVELOPMENT CORP., et al., Defendants,**

**Robert J. Werdan, Appellant.**

**No. C9-87-1400.**

Court of Appeals of Minnesota.

Nov. 24, 1987.

Greene. No testimony was taken. Werdan appeals from that order. We affirm.

## FACTS

In January 1985 Environmental Development Corporation (Endeco), a contractor constructing new homes, was formed. James Jacobson was its president. At incorporation five other positions were filled, with Robert Werdan as chairman. Werdan resigned January 5, 1987, but continues to hold stock in the company. Endeco is not operating now.

During its first year of operation the corporation maintained an office and spent its time organizing. In February 1986 Endeco participated in its first promotional effort, the Home and Garden Show. It was there that Leonard and Carole Greene first contacted Endeco and expressed an interest in having Endeco build their home. In March 1986 they signed a contract with Endeco for that construction.

During 1986 Endeco had three homes under construction: the Greene home, the Werdan home and the Ledvina home. Payments on the homes were made to the corporation, to be used to pay expenses as they accrued.

Werdan's house was being constructed on property that he owned in Burnsville, Minnesota. He claimed the purpose was two-fold: to be used as his residence and to be used as a model (Parade) home to show to prospective customers. The Greenes challenged the allegation of "residence." Their understanding was that it was to be used in the September 1986 Parade of Homes and then sold to generate additional funds for Endeco.

The Greenes' construction contract had a purchase price of $160,000, but with additional change orders the price increased to $256,605.29. The contract required progress payments at stated intervals, with 70 percent of the purchase price, including change orders, to be paid by the time the sheetrocking was completed. Although the sheetrocking was not completed by Endeco, the Greenes had paid $179,628.28 by August 28, 1986, meeting the 70 percent re-

Stephen M. Goldfarb and George W. Roberts, St. Louis Park, for respondents.

Richard L. Morris and Kathleen P. Curran, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

PARKER, Judge.

The trial court granted an order of attachment in the amount of $120,056.21 levied against real property owned by Robert J. Werdan, based on affidavits from Werdan, Leonard H. Greene and Carole Sue

quirement. No further payments were required until closing.

On October 14, 1986, Endeco asked the Greenes to pay an additional $5,000 to $6,000 to keep the sheetrockers on the job. The Greenes refused to pay any more money, and Endeco promptly refused to perform any more work; each claims the other breached the contract.

Endeco had applied for construction financing which was ultimately refused, Werdan claimed, because Leonard Greene had slandered the company by making false accusations about the quality of its work. Werdan claimed this caused or contributed to the loss of financing, ultimately caused Endeco to become non-operational, and required him to complete his home at a substantially increased cost.

Leonard Greene claimed he contacted only one financing officer, made no statements about the quality of Endeco's work, but did say that several mechanics' liens had been filed against both his house and Werdan's home. He argues that financing was denied for the home because the lienholders refused to subordinate their liens to a new mortgage.

The Greenes brought suit against Endeco, James Jacobson, Robert Werdan, Stanley Scott (an Endeco sales representative) and Thomas Randall (the subcontractor), alleging failure to complete the contract satisfactorily, failure to pay various subcontractors, and wrongful diversion of funds from the Greene home. Endeco asserted counterclaims of breach of contract and slander.

Werdan claimed that the Greenes' affidavits failed to support piercing the corporate veil with respect to his actions. Endeco has begun a foreclosure action of the mortgage it holds on the Greene home.

The Greenes brought a motion for attachment, seeking to attach Werdan's (Parade) home, which had been partially built by Endeco. The court stated that an order for attachment would be granted unless defendants/appellants posted a $65,000 bond. Werdan unsuccessfully attempted to obtain this bond, and the court ordered an attachment.

## ISSUES

1. Did the trial court err in conditioning its issuance of an order for attachment upon Werdan's posting a $65,000 bond?

2. Were the Greenes' affidavits sufficient to support a writ of attachment pursuant to Minn.Stat. § 570.02, subds. 1(1), (3) and (4) (1986)?

3. Was the evidence as a whole sufficient to support the court's order for attachment?

4. Did the trial court err in finding that a $500 bond would adequately protect Werdan from the damages he will suffer from this attachment?

## DISCUSSION

### I

The trial court's order was an invitation to Endeco and Werdan to elect either to (1) post a $65,000 bond or (2) face the issuance of an order of attachment for $120,056.21. The court was unwilling to issue the attachment if some other means could be devised to protect the Greenes' interests. In fact, the bond would have been more valuable to the Greenes than the attachment order. After deducting the commission, closing costs, and liens and encumbrances from the Parade Home's total value, the Parade Home's yield would have been approximately $24,225.

■ In light of these figures, the proposed $65,000 bond would have been a better source of security for the payment of any judgment against Werdan, and the trial court's order was reasonable.

### II

The trial court held that an attachment against the Parade Home was proper under Minn.Stat. 570.02, subds. 1(1), (3), and (4) (1986).

> Subdivision 1. **Grounds.** An order of attachment which is intended to provide security for the satisfaction of a judgment may be issued only in the following situations:

(1) when the respondent has assigned, secreted, or disposed of, or is about to assign, secrete or dispose of, any of the respondent's nonexempt property, with intent to delay or defraud the respondent's creditors;

\* \* \* \* \* \*

(3) when the respondent has converted or is about to convert any of the respondent's nonexempt property into money or credits, for the purpose of placing the property beyond the reach of the respondent's creditors;

(4) when the respondent has committed an intentional fraud giving rise to the claim upon which the civil action is brought \* \* \*.

■ Evidence supporting an order of attachment must be by testimony or affidavit alleging specific facts and must be more than a mere recitation of the statutory grounds for attachment. *In re Marich Construction Co.*, 391 N.W.2d 899, 902 (Minn.Ct.App.1986). Werdan has placed the Parade Home on the market for sale. Although he has two homes, the Parade Home is not claimed as his homestead and is therefore nonexempt property which may be attached. Demonstrating the requisite intent needed for subdivision (1) is difficult because Werdan's intent is a mental process known only to him. Intent must be shown by inference or presumption.

*State v. Williams*, 324 N.W.2d 154, 160 (Minn.1982), held that when the intent of an accused is an element of the crime, its existence is a jury issue. If certain basic facts are proved, a presumption is created that the intent existed. *See id.* The defendant may produce evidence to rebut the presumed connection between the basic facts and intent. The Greenes conceded they were unable to present any direct evidence of intent.

■ Inferential evidence of intent to delay or work a fraud is derived from Werdan's inability to secure the $65,000 bond at a cost of only $1,300. He did not qualify for the full amount without a letter of credit from his bank. James Jacobson, En-

deco's president, told the Greenes that some of the funds they had paid to Endeco were used to construct the Parade Home. To place the house on the market without making provision to repay the Greenes would work a fraud, because Werdan is the beneficiary of that diversion of funds. This justifies the issuance of the attachment order. Werdan himself admitted the diversion in a deposition:

Q. Did any of the money from the Greenes' home go into a home in Dakota County that we referred to in this proceeding at various times as the Parade of Homes home? \* \* \*

A. [Werdan] Probably.

Q. Is this home owned by you?

A. I think so.

Q. And you own that personally?

A. I think so.

Liens on the Greenes' home, filed as a result of Endeco's nonpayment, total $17,455.34. These liens, coupled with Werdan's admission, are sufficient to support the writ of attachment.

### III

Minn.Stat. § 570.026, subd. 3 (1986), provides that an order for attachment may be issued only if the claimant first demonstrates the probability of success on the merits, and then demonstrates the existence of at least one of the stated grounds.

The Greenes will probably be able to show that the contract was breached by Werdan, because they had performed completely by paying 70 percent of the contract price, while workers went unpaid. Both Werdan and Jacobsen admitted to diversion of funds. By refusing to complete construction, they appear to be in breach of the contract; the home was due for completion by October 9, 1986, but sheetrocking had not even been completed by October 16, 1986. The Greenes also allege negligent construction, although the record contains little hard evidence of building defects at this point.

More critically, the failure to pay subcontractors is evidenced by the $17,455.34 in liens on the Greene home. It appears the liens were for materials incorporated into the property before the breach. These

facts substantiate a charge of theft by nonpayment of improvements under Minn. Stat. § 514.02, subd. 1 (1986); no intent to defraud is required under this statute.

> If a person, on any improvement to real estate within the meaning of section 514.-01, fails to use the proceeds of any payment made to that person on account of such improvement by the owner of such real estate or person having any improvement made, for the payment for labor, skill, material, and machinery contributed to such improvement, knowing that the cost of any such labor performed, or skill, material, or machinery furnished for such improvement remains unpaid, and who has not furnished to the person, making such payment either a valid lien waiver as to any unpaid labor performed, or skill, material, or machinery furnished for such improvement, or a payment bond in the basic amount of the contract price for such improvement, conditioned for the prompt payment to any person or persons entitled thereto for the performance of labor or the furnishing of skill, material, or machinery for the improvement, shall be guilty of theft of the proceeds of such payment and upon conviction shall be fined not more than $3,000 or imprisoned not more than one year, or both.

Werdan claims he cannot be held individually liable for violation of this statute. The Minnesota Supreme Court has held that a corporate officer is criminally liable for his own acts:

> As we held in *State v. McBride* [215 Minn. 123, 9 N.W.2d 416 (1943) ], * * * a corporate officer is criminally liable for his own acts, even if done in his official capacitiy, and he is liable either directly as a principal or as an aider and abettor.

The Williamses are not shielded by the corporation, because:

> > It is the universal rule that an officer or agent of a corporation cannot avoid responsibility for his act on the ground that it was done in his official capacity, nor can he assert that acts in corporate form are not his acts because they are carried on by him through the instrumentality of the corporation which he controls and domi-

> > nates and which he has employed for that purpose.

*Williams*, 324 N.W.2d at 157.

Endeco was a very thinly capitalized corporation, and the Parade Home was built without any outside financing because funds were diverted to it from both the Greene home and the Ledvina home. The Ledvina home was not completed either; subcontractors were unpaid and liens were filed against that home as well. The Ledvina suit established a pattern of conduct for the trial court to consider.

The trial court found that the language of the statute on attachment allowed what is tantamount to piercing the corporate veil, because it was pierced first by Endeco's diversion of funds and again by the attempted disposition of the property held in Werdan's name. At the time this action was initiated, Werdan was the chairman of Endeco. Although he resigned in January 1987, he is still a major stockholder in Endeco; therefore, his property was properly attached.

Minn.Stat. § 570.026, subd. 3. (1986), provides that even though a claimant has demonstrated a probability of success on the merits and has demonstrated one of the specific grounds for an order of attachment, the order for attachment may not be granted if

> (1) the circumstances do not constitute a risk to collectibility of any judgment that may be entered; or

> (2)(i) respondent has raised a defense to the merits of the claiment's claim or has raised a counterclaim in an amount equal to or greater than the claim and the defense or counterclaim is not frivolous; and

> (ii) the interests of the respondent cannot be adequately protected by a bond filed by the claimant pursuant to section 570.041 if property is attached; and

> (iii) the harm suffered by the respondent as a result of seizure would be greater than the harm which would be suffered by the claimant if property is not attached.

There is ample evidence of a clear risk to collectibility of any judgment the Greenes might obtain. Endeco's and Wer-

dan's breach of contract and slander defenses were not frivolous, yet a bond will adequately protect Werdan's interests. The trial court considered the bonding requirements in Minn.Stat. § 570.041, subd. 1 (1986), and concluded that a minimun bond of $500 would suffice. The basis for this determination must include the fact that Endeco holds an $86,606.29 mortgage against the Greene house. If successful in foreclosing this mortgage, Werdan, as a principal shareholder, will realize some benefit, and if the Greenes are unsuccessful in their action, the attachment will be released.

We concur with the trial court's findings and, because this action affects a variety of people who will be injured by further delay, we strongly urge the parties to attempt to sell the property, pay the lienholders and escrow the net.

### DECISION

The issuance of an order for attachment was properly conditioned on the posting of a $65,000 bond. The affidavit was sufficient to support a writ of attachment and the evidence sufficient to support an order for attachment. A $500 bond will adequately protect defendants.

Affirmed.